IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**EDGAR COUNTY WATCHDOGS, INC,**
**KIRK ALEN, JOHN KRAFT,** and
**ALYSSIA BENFORD**,

CASE NO.:  5:21-cv-302-JSM-PRL

      Plaintiffs,

v.

**BONNIE KUROWSKI, IL REPORTER,**
**LLC, A FLORIDA LLC, FIGHT FOR IL,**
**INC. A FLORIDA NOT-FOR-PROFIT**
**CORPORATION,** and **ERIK PHELPS,**

      Defendants.

_____/

## <u>DEFENDANTS' MOTION TO DISMISS COMPLAINT</u>

COME NOW, Defendants BONNIE KUROWSKI, IL REPORTER, LLC, FIGHT FOR IL, INC. and ERIK PHELPS, by and through their undersigned attorneys, and pursuant to Rule 12(b)(6), <u>Fed.R.Civ.P.</u>, move this Court to dismiss the Complaint for failure to state a cause of action, and in support thereof say:

1.     This case involves a political dispute between two advocacy groups. Plaintiffs claim that they are associated with an organization that uncovers political corruption, particularly with regard to the administration of public records. Defendants are alleged to be associated with a group which educates the public as to the true nature of Edgar County Watchdogs: to extort money from local government through bogus public records litigation and to promote far right candidates to take over those governments from within.

2.      Because we live in the Twenty-First Century, this political dispute plays out through Twenty-First Century media; that is, via the Internet, on websites and social media.[1]

3.      While Twenty-First Century technology provides the platform, it is the centuries-old First Amendment – and the statutes and case law developed to protect speech rights – which will control the outcome.

4.      The Plaintiffs' Complaint is defective on  its face and is due to be dismissed for the following reasons:

A.      Count I – Statutory Claim under §540.08 (Use of Likeness):

(1)      This claim does not state a cause of action under the statute because there is no plausible factual allegation that the Plaintiffs' images were used for promotional purposes as opposed to targeting Defendants' political activities. *See*, §540.08(4)(a), Fla. Stat.; *See, also*, Tyne v. Time Warner Ent. Co., L.P., 901 So.2d 802 (Fla. 2005).

(2)      The §540.08 claims derive from exactly the same publications which the Plaintiffs claim are defamatory. Florida's single publication rule bars this cause

---

[1] Plaintiffs apparently do not dispute the fact that this is a political dispute and that Defendants' website is properly characterized as a political publication:

> 72.      The statements in context demonstrate that the statements complained of herein are malicious with the intent to "shut down" ECW. And the purpose is not legitimate "reporting" because KUROWSKI acknowledges that the false statements on Defendants Website are posted for political reasons as KUROWSKI claims her website is a "political online site".

Doc. 1 at 17, ¶72).

of action. *See*, <u>Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.</u>, 831 So.2d 204 (Fla. 4th DCA 2002).

      B.    <u>Count II - Defamation</u>

      (1)    Plaintiffs do not allege compliance with §770.01, <u>Fla.Stat.</u> which requires written notice and an opportunity to retract as a condition precedent to maintaining this action. Defendants' posts are clearly reports and political commentary intended to educate the public on matters of public concern. Under such circumstances, pre-suit notice is a condition precedent to maintaining this action. *See*, §770.01, <u>Fla. Stat.</u>; *See, also*, <u>Orlando Sports Stadium, Inc. v. Sentinel Star Co.</u>, 316 So.2d 607 (Fla. 4th DCA 1975).

      (2)    The allegations are excerpts taken out of context, not reproduced as exhibits to the Complaint and are not sufficient to permit a judge or jury to determine that the statements are defamatory.

      C.    <u>Count III – Intentional Infliction of Emotional Distress</u>

      (1)    <u>"Noose Flyer"</u>  The Complaint alleges that Defendant Kurowski re-posted a picture of a noose on "social media" which was "in relationship to BENFORD". These allegations cannot support a claim for IIED for the following reasons:

      (a)    As a matter of law, the "noose" and "Confederate flag" allegations do not rise to the level of outrageousness sufficient to support the tort. *See*, <u>Vance v. Southern Bell Tel. & Tel. Co.</u>, 983 F.2d 1573 (11th Cir. 1993), *cert. den*., 513 U.S. 1155 (1995).

      (b)    Kurowski is not alleged to have circulated the original flyer and her republication "on social media" was not directed to Benford. Florida law does not support liability where a social media post is not actually sent to the subject. *Compare*, <u>Horowitz</u>

v. Horowitz, 160 So.3d 530, 531 (Fla. 2nd DCA 2015); Wright v. Norris, 320 So.3d 253, 255 (Fla. 2d DCA 2021)

(c)    Kurowski is the only person alleged to have published the noose flyer on the Internet so that the Complaint must be dismissed as to the other three Defendants.

(2)    Allegations of "Adultery" - Accusations of adultery do not rise to the level of outrageousness unless directed to a vulnerable child concerning their parent.

(3)    The single publication rule bars this overlapping claim as a matter of law. See, Klayman v. Jud. Watch, Inc., 22 F.Supp. 3d 1240 (S.D. Fla. 2014).

5.    There are no plausible factual allegations that Defendant PHELPS published any information concerning the Plaintiffs, defamatory or otherwise. There is a single reference to PHELPS' association with the Defendant corporations and bare allegations that he published articles for those corporations. However, there is no allegation that PHELPS authored or published any of the specific articles complained of. Rather, Defendant KUROWSKI or the two Defendant corporations are alleged to be the responsible parties.

6.    No part of the Plaintiff's Complaint can survive this Motion to Dismiss.

7.    **LOCAL RULE 3.01(G) CERTIFICATION**    Undersigned counsel certifies that he has attempted repeatedly to confer with Plaintiffs' counsel. In particular, the undersigned forwarded a copy of this Motion along with three (3) e-mails to Plaintiffs' counsel (9/21, 9/22 and 9/24). In addition, the undersigned called Mr. Hanlon's office yesterday and left a detailed voice mail. Plaintiffs' counsel has not responded to any of these inquiries.

## MEMORANDUM OF LAW

### I.   Standard of Review.

The general standards for evaluating a motion to dismiss are well known to the

Court:

> To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).

Williams v. Cheatham, _ F.Supp.3d _, 2021 WL 2895743 at *1 (M.D. Fla. July 9, 2021).

"A complaint that provides 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss."

Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) *quoting* Twombly, 550

U.S. at 555.

### II.   PLAINTIFFS CANNOT STATE A CAUSE OF ACTION UNDER §540.08 BECAUSE THE PUBLICATIONS WERE NOT FOR PROMOTIONAL PURPOSES AND BECAUSE THE SINGLE PUBLICATION RULE BARS THE ACTION AS A MATTER OF LAW.

In this case, Plaintiffs allege that the Defendants have vigorously challenged their

self-proclaimed status as public watchdogs. Defendants have published reports and

commentary claiming that the Plaintiffs abuse public records laws, bring vexatious

litigation, hound public officials for extortionate or political purposes, disrupt public

meetings, abuse their IRS status by engaging in political activities and that they recruit far-

right militia of the same sort as were involved in the January 6th attack on the Capitol. (Doc. 1 at 4, ¶18; 6, ¶26; 7, ¶29;  8, ¶35; 9, ¶41; 11, ¶54; 13-15, ¶62). Defendants IL Reporter, and Fight for IL produced a seminar open to the public where they commented extensively on Plaintiffs' abuse of public records laws and the court system, their solicitation of far right supremacists to run for public office and smear campaigns directed against opponents (including vexatious litigation). (Doc. 1 at 13-15, ¶62). Various images of the Plaintiffs allegedly accompanied many of those stories and opinion pieces.

It is certainly fair to say that the publications complained of were *about* the Plaintiffs. However, the text associated with the Plaintiffs' images reported on their wrongdoing and political misadventures and did not involve advertising or commercial transactions like those contemplated by the statute. The best the Plaintiffs can do is to allege that Defendants' website solicits financial contributions in connection with "an image of United States currency fanned out in a person's hand." (Doc. 1 at 19, ¶78). Notably, that particular image was not of any of the Plaintiffs nor did it suggest that the Plaintiffs endorsed Defendants' mission or that they supported contributions to the websites. Plaintiffs' conclusory statements that the publications were for a commercial purpose are not supported by the factual allegations and are insufficient to support a cause of action under §540.08, Fla.Stat.

Section 540.08, Fla.Stat. creates a cause of action for wrongful use of likeness in a commercial setting where the use of someone's image is intended to promote a product or falsely implies endorsement of the product. However, the statute does not apply merely because an image is used without consent by a for-profit business. Interestingly, this is an area of Florida law that was first advanced by the Federal Courts and only later adopted by

Florida state courts. <u>Lane v. MRA Holdings, LLC</u>, 242 F.Supp. 2d 1205 (M.D. Fla. 2002)

is the leading precedent:

> The Defendants first argue that they are not liable under Fla. Stat. § 540.08 because they did not use Lane's image for trade, commercial, or advertising purposes. Under Fla. Stat. §540.08, the terms "trade", "commercial", or "advertising purpose" mean using a person's name or likeness to directly promote a product or service. <em>See</em> <u>Valentine v. CBS, 1213 Inc.</u>, 698 F.2d 430, 433 (11th Cir. 1983) (recognizing that the proper interpretation of Fla. Stat. §540.08 requires the plaintiff to prove that the defendants used a name or likeness to directly promote a product or service); <u>Tyne v. Time Warner Entm't Co., L.P.</u>, 204 F.Supp.2d 1338 (M.D. Fla. 2002) (recognizing that Fla. Stat. §540.08 only prohibits the use of a name or image when such use directly promotes a commercial product or service); <u>Epic Metals Corp. v. CONDEC, Inc.</u>, 867 F.Supp. 1009, 1016 (M.D. Fla. 1994) ("Florida Statute §540.08 prevents the unauthorized use of a name or personality to directly promote the product or service of the publisher."); <u>National Football League v. The Alley, Inc.</u>, 624 F.Supp. 6, 7 (S.D. Fla. 1983) ("Section 540.08 of the Florida Statutes prohibit unconsented use of an individual's name and likeness only when such directly promotes a commercial product or service"); <u>Loft v. Fuller</u>, 408 So.2d 619, 622 (Fla. 4th DCA 1981) ("In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial, or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher").

> As a matter of law, this Court finds that Lane's image and likeness were not used to directly promote a product or service. In coming to this conclusion, this Court relies upon Section 47 of the Restatement (Third) of Unfair Competition which defines "the purposes of trade" as follows:

>> The names, likeness, and other indicia of a person's identity are used "for the purposes of trade" ... if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use "for the purpose of trade" does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.

> Therefore, under this definition, the "use of another's identity in a novel, play, or motion picture is ...not ordinarily an infringement ... [unless]

the name or likeness is used solely to attract attention to a work that is not related to the identified person..." Id. at comment c.

In this case, it is irrefutable that the Girls Gone Wild video is an expressive work created solely for entertainment purposes. Similarly, it is also irrefutable that while Lane's image and likeness were used to sell copies of Girls Gone Wild, her image and likeness were never associated with a product or service unrelated to that work. Indeed, in both the video and its commercial advertisements, Lane is never shown endorsing or promoting a product, but rather, as part of an expressive work in which she voluntarily participated. Consequently, in accordance with Section 47 of the Restatement, the use of Lane's image or likeness in Girls Gone Wild, and in the marketing of that video cannot give rise to liability.

Id. at 1212–13.

The Florida Supreme Court expressly adopted Lane as the correct interpretation of Florida law in Tyne v. Time Warner Ent. Co., L.P., 901 So.2d 802, 807–08 (Fla. 2005) ("We agree with the reasoning of these decisions and Loft that the purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else. Loft, 408 So.2d at 622."). Every subsequent case to have considered the issue has followed the same rule of law. See, e.g., Anderson v. Best Buy Stores L.P, 2020 WL 5122781 at *2–3 (M.D. Fla. 2020), report and recommendation adopted sub nom. Anderson v. Coupons in News, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020) ("To accept Plaintiff's view of the statute, would mean that every article Coupons published on its website with a photograph would run afoul of §540.08, because presumably, every article was published to further its business interests. This 'would result in substantial confrontation between this statute and the first amendment to the United States Constitution guaranteeing freedom of the press and of speech' [quoting Tyne]. Accordingly, Plaintiff has failed to allege plausible claims against Coupons for commercial

misappropriation in violation of Florida Statute § 540.08…"); <u>Fuentes v. Mega Media Holdings, Inc.</u>, 721 F.Supp. 2d 1255, 1258 (S.D. Fla. 2010) ("To maintain a cause of action for a violation of section 540.08, a plaintiff must allege that his or her name or likeness is used to directly promote a commercial product or service, such as T-shirts, hats, coffee mugs, etc. … Plaintiff's complaint merely states that Defendants published or displayed his name and home movies during a broadcast on Maria Elvira Live and on the show's website without his consent."); <u>Faulkner Press, L.L.C. v. Class Notes, L.L.C.</u>, 756 F.Supp. 2d 1352, 1360 (N.D. Fla. 2010) ("The statute is not violated when a person's identity is used 'in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.'" [*quoting* <u>Tyne</u>]").

Count I fails to state a cause of action because it does not allege that Plaintiffs' images were used to promote Defendants' products – or that Defendants even had a product to sell. Rather, this claim amounts to a clumsy effort to get around the constitutional protections afforded to speech and the statutory barriers to maintaining a defamation action.

## III.   THE SINGLE PUBLICATION RULE BARS THE §540.08, FLA.STAT. CLAIM BECAUSE THE INJURY ARISES FROM THE SAME PUBLICATIONS AS DOES PLAINTIFFS' DEFAMATION ACTION

Defamation is a constitutionalized tort around which a number of specialized rules have arisen. One of those doctrines is the "single publication" or "single action" rule. The intent of that rule is to prohibit litigants from "pleading around" the requirements for a defamation claim by alleging other torts which are not subject to the constitutional restrictions applicable to libel and slander. Where those other potential torts are factually rooted in the publication of a defamatory statement, the Court will not permit the assertion

of claims in addition to defamation. Put another way, when a defamation action is asserted, any other tort based on the same publication will be barred:[2]

> "In Florida, a single publication gives rise to a single cause of action." Callaway Land & Cattle Co. v. Banyon Lakes C. Corp., 831 So.2d 204, 208 (Fla. 4th DCA 2002) (citation omitted). Consequently, "[t]he various injuries resulting from it are merely items of damage arising from the same wrong." Id. (citation omitted). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." Gannett Co., Inc. v. Anderson, 947 So.2d 1, 13 (Fla. 1st DCA 2006) (internal quotation marks and citation omitted). Pursuant to the rule, courts dismiss concurrent counts for related torts based on the same publication and underlying facts as the failed defamation count. See Ortega Trujillo v. Banco Cent. Del Ecuador, 17 F.Supp.2d 1334, 1339–40 (S.D. Fla. 1998) (dismissing false light privacy claim arising from same allegedly defamatory publication); Fridovich v. Fridovich, 598 So.2d 65, 70 (Fla. 1992) ("[T]he successful invocation of a defamation privilege *will* preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication." (emphasis in original)).

> When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event. See Kamau v. Slate, No. 4:11cv522–RH/CAS, 2012 WL 5390001, at *7–8 (N.D. Fla. Oct. 1, 2012) (allowing plaintiffs to amend their defamation claim, but dismissing counts for injurious falsehood and interference with business reputation because they relied on same event as defamation claim).

---

[2] The defamation claim asserted in this case is legally deficient and must be dismissed. However, additional torts based on the same publication are subject to dismissal even in those cases where the defamation claim is viable. *See*, Happy Tax Franchising, LLC v. Hill, No. 19-24539-CIV, 2021 WL 3811041 at *6 (S.D. Fla. June 7, 2021), *report and recommendation adopted sub nom.* Happy Tax Franchising, LLC v. JL Hill Grp., LLC, No. 19-24539-CIV, 2021 WL 3793050 (S.D. Fla. Aug. 26, 2021); *See, also*, Tymar Distribution LLC v. Mitchell Grp. USA, LLC, No. 21-21976-CIV, 2021 WL 4077966 at *8 (S.D. Fla. Sept. 8, 2021) ("The underpinnings of the single-action rule make clear that it does not matter whether the defamation claim fails, succeeds, or is not brought at all.").

Klayman v. Judicial Watch, Inc., 22 F.Supp. 3d 1240, 1256 (S.D. Fla. 2014); *See, also,* Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp., 831 So.2d 204, 207–08 (Fla. 4th DCA 2002) *quoting* Messenger v. Gruner + Jahr USA Publ'g, 994 F.Supp. 525, 531 (S.D. N.Y. 1998) ("The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm."); Tymar Distribution LLC v. Mitchell Grp. USA, LLC, No. 21-21976-CIV, 2021 WL 4077966, at *7 (S.D. Fla. Sept. 8, 2021) ("In reliance on the single-action rule, courts dismiss concurrent counts for related torts based on the same publication and underlying facts as a failed defamation count."); Happy Tax Franchising, LLC v. Hill, 2021 WL 3811041 at *6 ("[T]he Single Publication/Single Action Rule…  precludes a plaintiff from asserting multiple causes of action when they arise from the same publication upon which plaintiff's defamation claim is based."); Maletta v. Woodle, No. 2:20-CV-1004-JES-MRM, 2021 WL 1894023, at *6 (M.D. Fla. May 11, 2021) ("[T]he allegedly defamatory statements in the Cancer in our Resort Letter cannot form the basis for the conspiracy claim because they also form the basis for the defamation and defamation per  se  claims. Accordingly,  the  civil  conspiracy  claim violates  Florida's single action rule and  Count  Five  will  be  dismissed  as  to  each plaintiff.").

All of the publications Plaintiffs point to as supporting their §540.08 claims are also relied on to support their defamation claims. (*Compare*, Doc. 1 at 6-17, ¶¶26-65, 71-72 *with* 18, ¶73 (incorporating all of the factual allegations to support the §540.08 claims). Accordingly, the single publication rule precludes the cause of action based on §540.08 as a matter of law.

**IV.**     **THE COMPLAINT IS DEFICIENT BECAUSE PLAINTIFFS DID NOT SERVE THE REQUIRED §770.01 NOTICE PRIOR TO FILING SUIT.**

As a matter of public policy and constitutional necessity, the Florida Statutes require notice and an opportunity to retract before a defamation action may be brought *See, generally*, <u>Rendon v. Bloomberg, L.P.,</u> 403 F.Supp. 3d 1269, 1273 (S.D. Fla. 2019) ("Florida Statutes Section 770.01 provides newspapers and publications with the 'opportunity in every case to make a full and fair retraction,' serving the ultimate purpose of protecting the free dissemination of news to the public."); <u>Mancini v. Personalized Air Conditioning & Heating, Inc.,</u> 702 So.2d 1376, 1378 (Fla. 4th DCA 1997) (The statutory scheme of the notice and retraction provisions upholds "the value of the American tradition of a free press."). The statutory notice provision appears in §770.01, <u>Fla. Stat</u>.:

> ***Before any civil action is brought*** for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory. (emphasis added).

Plaintiffs did not allege that they served the requisite notice and there is no notice attached as an exhibit to the Complaint. (Doc. 1, *generally*).

**A.**     **Statutory Notice is Required Pursuant to §770.01, Fla.Stat.**

There cannot be any doubt that a §770.01 pre-suit notice was required before Plaintiffs initiated this suit. Florida case law does not limit the statutory notice to "conventional" publishers such as newspapers or television stations. Rather, Florida Courts have recognized the shift of communications to the Internet and have taken a

correspondingly broad view of §770.01, holding that websites which publish news stories are protected by the statute to the same extent as old-style media:

> In <u>Comins</u>, we held that, under <u>Ross</u>, the "notice requirement of section 770.01 applies to allegedly defamatory statements made in such a public medium, the purpose of which is the free dissemination of news or analytical comment on matters of public concern". <u>Comins</u>, 135 So.3d at 560. The allegations of the instant complaint sufficiently establish that Elsevier's website is a public medium engaging in the free dissemination of information or disinterested and neutral commentary or editorializing on matters of public interest since the complaint alleges that Elsevier is an internet publisher of various purportedly scientific, technical, and medical journals and information.

<u>Plant Food Sys., Inc. v. Irey</u>, 165 So.3d 859, 861 (Fla. 5th DCA 2015). Even an informal "blog" site has been held to be subject to §770.01 if the information is of public interest.

*See*, <u>Comins v. Vanvoorhis</u>, 135 So.3d 545 (Fla. 5th DCA 2014) (Internet blog maintained by university student to comment on issues of public concern was entitled to §770.01 pre-suit notice); *See, also*, <u>Buckley v. Moore</u>, 20-CIV-61023-RAR, 2021 WL 3173185, at *6 (S.D. Fla. July 26, 2021) ("TopSchools.org… falls squarely under <u>Comins</u>'s description of the type of blogs that constitute an "other medium" for purposes of section 770.01.").[3]

Plaintiffs' own Complaint confirms the fact that Defendants' website, publications and conferences inform the public on Plaintiffs' activities, report on public meetings and issues of public importance, and engage in political commentary regarding Plaintiffs'

---

[3] It is also clear that the protection afforded by §770.01 is not limited to businesses engaged in publishing, but extends to the individual authors and publishers of those works. *See*, <u>Mancini v. Personalized Air Conditioning & Heating, Inc.</u>, 702 So.2d 1376, 1378 (Fla. 4th DCA 1997) ("There is nothing in <u>Ross</u> to indicate that in using the term "newspaper" our supreme court was referring only to the entity as distinguished from the individual columnists, reporters and editorial writers who write for the newspaper."

goals.[4] Plaintiffs claim to be public watchdogs. By the same token, it is clear that Defendants "watch the watchdogs" and vigorously question their actions and motives. While Plaintiffs claim that Defendants' statements are false and defamatory, there is no question that the subject matter of their posts are newsworthy and of public interest.[5]

Plaintiffs allege that the edgarcountywatchdog.com website has published articles which "offer assistance to government officials" in the form of a "First Aid Kit for Elected Officials" (Doc. 1 at 4, ¶18; 6, ¶26). Elsewhere in the Complaint, Plaintiffs acknowledge that Defendants' publications report on the Plaintiffs' public activities, including submission of false or abusive FOIA requests, filing vexatious legal claims and soliciting right wing militia to disrupt elections. (Doc. 1 at 6, ¶26; 7, ¶29). Defendant Kurowski is alleged to have posted to Facebook accounts of Benford being found guilty after a lengthy investigation costing some $12,000 of taxpayer money. (Doc. 1 at 8, ¶35). Kurowski is also alleged to have reported that Plaintiffs are under Federal investigation for cyberstalking,

---

[4] The Complaint is far from clear as to which Defendant published which statement. It appears that all or nearly all of the posts were allegedly made by Defendant Kurowski on Facebook or on a website which she registered. Defendant Phelps does not appear to have published anything; he is apparently named only because he is listed as an officer of the two corporate Defendants. Those two corporations are only mentioned in connection with a conference organized to publicize and throw light on the Plaintiffs' activities. The Complaint violates Rule 8 and Rule 12 by failing to separate claims into separate counts and by naming all of the individual Defendants in all of the Counts even when it is clear that only one or a subset of the Defendants published anything.

[5] There is no doubt that the public is interested in these matter. Plaintiffs are public figures who claim that their work has drawn the attention of the nation's largest and most prominent media companies. (Doc. 1 at ¶¶1-5). Plaintiffs allege that one or more of the Defendants hosted a three-day seminar addressing Plaintiffs' methods and operations. (Doc. 1 at 12-13). Plaintiffs claim to have suffered more than $85,000 in damages. Apparently, quite a number of people follow Defendants' publications. (Doc. 1 at 3, ¶15).

that they were physically threatening at a meeting of the Township Trustees, that they intentionally "Zoom bomb" public meetings and that their IRS standing is in jeopardy because of Plaintiffs' political activities. (Doc. 1 at 7, ¶29; 9, ¶41; 11, ¶54). Finally, Plaintiffs allege that Defendants IL Reporter, and Fight for IL conducted a public seminar which highlighted what they viewed as the Plaintiffs' abuse of public records laws and their unsavory political activities. (Doc. 1 at 13-15, ¶62).

Defendants, as the alleged publishers of these statements, were entitled to notice under §770.01 and the opportunity to correct or retract any inaccurate stories. *See*, Plant Food Sys., *supra*; Comins v. Vanvoorhis, *supra*; Buckle, *supra*.

## B. Failure to Provide a §770.01 Pre-Suit Notice Requires Dismissal of Plaintiffs' Complaint.

Florida law is clear regarding the consequences of the failure to give presuit notice: the action must be dismissed. Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607 (Fla. 4th DCA 1975) is the foundational case on this point:

> We … direct our attention to appellees' claim that the cause of action is insufficient due to appellants' failure to serve the written notice requirement of Fla.Stat. 770.01 before instituting this libel action. A cause of action must exist and be complete before an action can be commenced or, as sometimes stated, the existence or non-existence of a cause of action is commonly dependent upon the state of facts existing when the action was begun. As a general rule the plaintiff may not be permitted to cure the defect of non-existence of a cause of action when suit was begun, by amendment of his pleadings to cover subsequently accruing rights, 1 Am.Jur.2d, Actions, Sec. 58.
>
> …
>
> With respect to appellants further argument concerning its compliance with the written notice requirement of Fla.Stat. 770.01 subsequent to filing suit and the unconstitutionality of said requirements, we find the language of the Florida Supreme Court in Ross v. Gore, 48 So.2d 412, to be fitting, i.e.:

> 'As to plaintiff's second question, he contends on this appeal
> that, even in the absence of notice and a retraction, his suit
> should not be dismissed, as it is still valid for the recovery of
> actual damages; and that if the provision as to notice is
> construed to be a condition precedent to suit, such provision
> is unconstitutional. Neither of these contentions can be
> sustained'.

Id. at 610.

Orlando Sports Stadium has been followed in every subsequent case. *See*, Skupin
v. Hemisphere Media Group, Inc., 314 So.3d 353, 357 (Fla. 3d DCA 2020) ("Failure to
comply with the notice provisions of section 770.01 requires dismissal of the complaint for
failure to state a cause of action"); Mancini, 702 So.2d at 1377–78 ("Failure to comply
with the notice provision of section 770.01 requires dismissal of the complaint for failure
to state a cause of action."); Rendon v. Bloomberg, L.P., 403 F.Supp. 3d 1269, 1273 (S.D.
Fla. 2019) ("The statute and its supporting case law establish that written notice on the
defendant is a condition precedent to a claim for defamation."); Nelson v. Associated Press,
Inc., 667 F.Supp. 1468, 1474–75 (S.D. Fla. 1987) ("Having failed to comply with §770.01,
Plaintiff's claim against AP must fail, since the statute is a condition precedent to her
maintaining the suit."); Intihar v. Citizens Info. Associates, LLC, 2014 WL 842464 at *3
(M.D. Fla. 2014) ("Florida law is clear that "[f]ailure to comply with the notice provision
of section 770.01 requires dismissal of the complaint for failure to state a cause of action.").

Case law is also clear that the defect cannot be cured by giving notice after suit is
filed – there is no "relating back" to the filing date:

> Compliance with section 770.01, where necessary, is a condition precedent
> to maintaining an action, and one cannot satisfy the statute by providing
> notice subsequent to filing the complaint. Orlando Sports Stadium, Inc. v.
> Sentinel Star Co., 316 So.2d 607 (Fla. 4th DCA 1975). If the statute were
> applicable to Gifford's action, amendment of the existing complaint would

not be authorized. Presumably, therefore, the circuit court dismissed the action without prejudice to refile rather than merely to amend.

Gifford v. Bruckner, 565 So.2d 887, 888 (Fla. 2d DCA 1990), *See, also*, §770.01, Fla. Stat.

("***Before any civil action is brought*** for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant.... (emphasis added). When amending a complaint would be futile, there is no need to allow another opportunity. *See*, Kalmanson v. Lockett, 848 So.2d 374, 381 (Fla. 5th DCA 2003). Accordingly, the Complaint must be dismissed without leave to amend.

**C.    The Factual Allegations are Too Sparse and Conclusory to State a Cause of Action for Defamation– Particularly when the Publications are not Attached as Exhibits and are Presented as Brief Excerpts without Context.**

The common law of defamation requires allegations and proof of these elements:

(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.

Jews For Jesus, Inc. v. Rapp, 997 So.2d 1098, 1106 (Fla. 2008); Parekh v. CBS Corp., 2020 WL 3400679, at *3 (11th Cir. June 19, 2020) (Citing Jews for Jesus and reciting same elements). Where libel is at issue, good pleading practices demand that the publication be identified in the body of the complaint and that a full copy of the statement be attached as an exhibit.[6] The bare allegations found in the Complaint are not adequate because they

---

[6] While it is foolish not to attach the statement as an Exhibit, it is not strictly necessary if the defamatory publication is fully described in the Complaint. Here, Plaintiffs fail at either alternative.

suffer from one or more of the following defects:

A.    The excerpts from the posts and publications are presented out of context or are so brief that one cannot determine what the story is about or whether the alleged false statement is corrected or supported elsewhere in the publication. The District Court in Wardak v. Goolden, 2020 WL 9718811 at *9 (S.D. Fla. May 22, 2020) dismissed a similar defamation claim alleging a "smear campaign" for these very reasons:

> Wardak fails to allege sufficient facts regarding the publication of the alleged defamatory statements because he does not provide the full statements, including the relevant context in which the alleged statements that he was an "arms dealer" and "stalker" were made. Such a shortcoming is fatal to Wardak's defamation claim. (citation omitted).  Indeed, without specific allegations regarding the publication of these statements, the undersigned cannot weigh whether the alleged statements, even when viewed in the light most favorable to Wardak, are defamatory or the kind of opinion or hyperbole protected by the Constitution. (citation omitted). Given the sparsity of the allegations, and considering the relationship between the parties, the context is particularly important…

Wardak v. Goolden, 2020 WL 9718811 at *9 (S.D. Fla. May 22, 2020); *See, also*, Rubin v. U.S. News & World Rep., Inc., 271 F.3d 1305, 1306 (11th Cir. 2001) ("A statement is not defamatory unless the "gist" or "sting" of the statement is defamatory. The gist of any statement within a publication or broadcast is found only by reference to the entire context." (footnotes omitted)).

Most of the statements either do not comment directly on the Plaintiffs' character or are clearly part of a larger story and presented out of context:

> 43.  … "Edgar County Watchdogs is not an actual watchdog site. It prints stories based on assumptions made by what they can find on Google, their assumptions are never followed up, no supporting docs are posted unaltered, and if you disagree with them they will google you, write stories about your personal info, harass you, call your employer, and support corrupt politicians."  (Doc. 1 at 9, ¶43).

Some allegations focus on tiny discrepancies or technicalities that do not appear to be defamatory at all:

> 31.    [S[he is NOT a FORENSIC auditor yet has done services, collected pay but not turned in the audits. Former Censured elected official, many losses, and reported to the professional Business Regulations of IL.
>
> 32    Plaintiff BENFORD has never charged for audits not conducted… (Doc. 1 at 7-8, ¶¶31, 32).

Other allegations are mere opinion – particularly fanciful opinion, at that:

> 50.    …. KUROWSKI posted a false statement on Facebook stating "[Benford and ECW] are "a team of domestic terrorists" and "Satan Alysisa (sic) aka ECW Terrorists". (Doc. 1 at 11, ¶50).

While other allegations are simply puzzling:

> 40.    On or about December 9, 2020, KUROWSKI posted false statement on Facebook stating that KRAFT abused drugs "Maybe you should sleep instead of post on all those drugs" and also, as a Doctor she stated that Kraft was "medically insane".
>
> 42.    On or about December 15, 2020, KUROWSKI posted false statement to an article on the ECW website stating that "These men are awful men who hate women. They have affairs on their wives…". (Doc. 1 at 9, ¶¶40, 42).[7]

The allegations are especially inadequate because they are not accompanied by copies of the actual publications which would inform both content and context. *Compare*, Five for Ent. S.A. v. Rodriguez, 877 F.Supp. 2d 1321, 1328–29 (S.D. Fla. 2012) ("In one instance, Plaintiffs did not even attach the article containing the Baldiri's statements... In the absence of the necessary facts - when the statements were made - and an adequate

---

[7] "But merely tossing insults, as Respondent did in this case, is not defamation." Logue v. Book, 297 So. 3d 605, 614 (Fla. 4th DCA 2020), *review den*., WL 276145 (Fla. Jan. 27, 2021).

description of the statement the defamation claim as it related to Baldiri's statement must be dismissed with leave to plead anew.").

        B.      The actual publisher is often not identified. While the social media posts are all attributed to Defendant Kurowski, as is the "noose" publication, no one is specifically identified as the author or publisher of any the materials appearing on the website. *See*, Happy Tax Franchising, LLC v. Hill, 2020 WL 6946086 at *5 (S.D. Fla. 2020), *report and recommendation adopted sub nom.* Happy Tax Franchising, 2020 WL 6945935 at 5 ("[T]he Second Amended Complaint fails to allege facts sufficient to attribute publication of the defamatory statements to any named Defendant….. These facts are insufficient to allege that every and all Defendants are responsible for the publication of the false statements.");  Five for Entm't, 877 F.Supp. 2d at 1328 ("In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred.")

        C.      Plaintiffs specify the dates when "social media" posts were made and also specify the date of the seminar put on by the corporate Defendants. However, they do not state when any of the website publications were made. (Doc. 1 at 6-8, ¶¶26-34). The failure to specify the date of publication is fatal to the pleading. *See, also*, Five for Ent., 877 F.Supp. 2d at 1328 ("In a defamation case, 'a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred.'" (citation omitted; interior quotes omitted)).

### III.   COUNT IV  (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) FAILS TO STATE A CAUSE OF ACTION.

The allegations concerning the "noose" flyer" and possible adultery cannot support a claim for intentional infliction of emotional distress as a matter of law. Those allegations would be barred in any event by the single publication rule.[8]

#### A.   THE STATEMENTS COMPLAINED OF ARE NOT SO OUTRAGEOUS AS TO SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The elements of a cause of action for intentional emotional distress are as follows:

(1)    The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2)    The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3)    The conduct caused emotional distress; and

(4)    The emotional distress was severe.

Stewart v. Walker, 5 So.3d 746, 749 (Fla. 4th DCA 2009).

This Court is required to determine in the first instance, and a matter of law, whether a statement is objectively so outrageous as to permit a claim for intentional infliction of emotional distress:

> What constitutes outrageous conduct is a question that must be decided as a matter of law. De La Campa v. Grifols Am., Inc., 819 So.2d 940, 943 (Fla. 3d DCA 2002) ("What constitutes outrageous conduct is a question for the trial court to determine as a matter of law.") The plaintiff's "subjective response" to the conduct "does not control the question of whether the tort

---

[8] Count IV should clearly be separated into separate counts. The allegations concerning the "noose flyer" only concern Plaintiff Benford. It is uncertain which of the Plaintiffs complain about the inquiries concerning their marital fidelity.

of intentional infliction of emotional distress occurred." <u>Liberty Mut. Ins. Co. v. Steadman</u>, 968 So.2d 592, 595 (Fla. 2d DCA 2007).

<u>Deauville Hotel Mgmt., LLC v. Ward</u>, 219 So.3d 949, 955 (Fla. 3d DCA 2017); *See, also*, <u>Nassar v. Nassar</u>, 853 F. App'x 620, 622 (11th Cir. 2021) ("What constitutes outrageous conduct is a question that must be decided as a matter of law" (*citing* <u>Deauville Hotel</u>).

The substantive standard for the tort focuses on whether the alleged actions are truly "intolerable in a civilized community". *See*, <u>Deauville Hotel</u>, 219 So.3d at 955 ("As to the second element, for one's actions to rise to the level of intentional infliction of emotional distress, it must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' (citation omitted)); *See, also*, <u>Gomez v. City of Doral</u>, No. 1:20-CV-20389-JLK, 2021 WL 848867, at *4 (S.D. Fla. Mar. 5, 2021) ("Plaintiff has not plausibly alleged that the conduct of Defendants went 'beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community.'"); <u>Myers v. Provident Life & Accident Ins. Co.</u>, 472 F.Supp. 3d 1149, 1182 (M.D. Fla. 2020) (Same). "Florida case law has consistently held that mere insults and indignities do not support a claim for the tort of intentional infliction of emotional distress." <u>Koutsouradis v. Delta Air Lines, Inc.</u>, 427 F.3d 1339, 1344–45 (11th Cir. 2005).

The Eleventh Circuit has already determined that the display of a noose under far worse circumstances - and with additional aggravating factors – was not sufficient to support a claim for intentional infliction of emotional distress. *See*, <u>Vance v. Southern Bell Tel. & Tel. Co.</u>, 983 F.2d 1573 (11th Cir. 1993); *See, also*, <u>Lopez v. City of W. Miami</u>, 2015 WL 12990226 at *1 (S.D. Fla. 2015) ("Florida courts have consistently rejected

attempts to find intentional infliction of emotional distress based on verbal harassment, even where severe, or racial or sexual discrimination in the workplace." (citation omitted)).

Plaintiffs cite to <u>Korbin v. Berlin</u>, 177 So.2d 551 (Fla. 3rd DCA 1965) for the proposition that assertions of adultery or infidelity can be sufficient to support a claim for intentional infliction of emotional distress. Social mores in the mid-sixties were certainly different from the Internet era. The consensus of modern opinion is that accusations of adultery are not sufficient to state an IIED claim. *See, e.g.*, <u>Poston v. Poston</u>, 112 N.C. App. 849, 851, 436 S.E.2d 854, 856 (1993) ("We find that appellant's allegation of adultery does not evidence the extreme and outrageous conduct which is essential to this cause of action"); <u>Whittington v. Whittington</u>, 766 S.W.2d 73, 74–75 (Ky. Ct. App. 1989) ("The emotional and financial distress caused by a spouse's fraud and adultery may be very painful and difficult but does not necessarily implicate the tort of outrage.").

However, the age of the case is not the only reason why it fails to support Plaintiffs' claim here. The disclosure in <u>Korbin</u> was made to a young child and concerned emphatic comments about a parent's infidelity. At least one other Court has noted that <u>Korbin</u> concerned a child of tender years and that the decision must confined to those facts. *See*, <u>Sullivan v. Malta Park</u>, 2014-0478 (La. App. 4 Cir. 2014), 156 So.3d 751, 761 (Commenting that <u>Korbin</u> was "illustrative of the application of the vulnerable victim factor, albeit in the context of a child"). In addition, Plaintiffs allegations are equivocal: it appears that the author was inquiring as to Plaintiffs' fidelity rather than asserting that one or more of the Plaintiffs was actually unfaithful to their spouse. (Doc. 1 at 8, ¶36).

**B.** **An IIED Claim Violates the Single Publication Rule where the same Statements are Alleged to be Defamatory.**

The single publication rule applicable to torts in general applies to claims for intentional infliction of emotional distress as well:

> "In Florida, a single publication gives rise to a single course of action." <u>Ortega Trujillo v. Banco Cent. del Ecuador</u>, 17 F.Supp. 2d 1340, 1343 (S.D. Fla. 1998). "[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as outrageous.'" <u>Fridovich v. Fridovich</u>, 598 So.2d 65, 70 (Fla. 1992); *see also* <u>Boyles v. Mid-Fla. Television Corp.</u>, 431 So.2d 627, 636 (Fla. Dist. Ct. App. 1983), approved, 467 So.2d 282 (Fla. 1985).

<u>Rubinson v. Rubinson</u>, 474 F. Supp. 3d 1270, 1278 (S.D. Fla. 2020); *See, also*, <u>Maletta v. Woodle</u>, No. 2:20-CV-1004-JES-MRM, 2021 WL 1894023 at *5 (M.D. Fla. May 11, 2021) ("[T]he Court agrees with defendants that he 'cannot transform a defamation action into a claim for intentional infliction of emotional distress.'"); <u>Fridovich v. Fridovich</u>, 598 So.2d 65, 70 (Fla. 1992) ("In short, *regardless of privilege,* a plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as "outrageous."); <u>Ortega Trujillo v. Banco Cent. del Ecuador</u>, 17 F.Supp. 2d 1340, 1343 (S.D. Fla. 1998) ("An attempt to state a claim for intentional infliction of emotional distress based on the same publication as the defamation count must fail.... The claim for intentional infliction of emotional distress must stem from outrageous conduct separate from the defamation and not merely "[re]describe the tort of libel while characterizing it as 'outrageous conduct.'"); <u>Kinsman v. Winston</u>, 2015 WL 12839267 at *5 (M.D. Fla. 2015) (Same); <u>Klayman v. Jud. Watch, Inc.</u>, 22 F. Supp. 3d 1240, 1256–57 (S.D. Fla. 2014 (Same).

**V.     Defendant Phelps is not Specifically Alleged to have Done Anything.**

This Complaint is not a masterwork of pleading. In fact, it is nearly impossible to determine which Defendant is responsible for publishing which statement. It is, however, possible to determine that Defendant *Phelps is not alleged to have done anything* other than be associated with Defendant Kurowski. The Complaint alleges that Phelps is a director of one of the two corporate Defendants (*i.e.*, Fight for IL). (Doc. 1 at 6, ¶25). The Complaint also includes two bare assertions that Phelps published unspecified defamatory statements. (Doc. 1 at 22, ¶94 "[PHELPS] published THE (sic) statements set forth in this complaint…"; *See, also*, Doc. 1 at 4, ¶18). That bare allegation of a publication is not sufficient to state a claim against Phelps. *See*, <u>Happy Tax Franchising</u>, 2020 WL 6946086 at *5 ("[T]he Second Amended Complaint fails to allege facts sufficient to attribute publication of the defamatory statements to any named Defendant."). Moreover, the general allegation is belied by specific allegations through the rest of the Complaint which show that Defendant Kurowski was the author and/or publisher of all or most of the statements.[9] (Doc. 1 at 5-17). Phelps' inclusion in this lawsuit appears to be a case of "guilt by association" and nothing more.

WHEREFORE, Defendants move this Court to dismiss the Complaint without leave to amend.

---

[9] There is some ambiguity about the edgarcountywatchdog.com website. The Complaint states that Kurowski registered the domain name. (Doc. 1 at 5, ¶¶ 22, 23). Plaintiffs apparently assume that the reader will conclude that Kurowski was also responsible for posts to that website. However, the Complaint does not actually make that explicit and the Court is left to guess who the author and publisher may be.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was furnished to ROBERT T. HANLON, Esquire [robert@robhanlonlaw.com], 131 East Calhoun Street, Woodstock, Illinois 60098, via the CM/ECF System on this 24th day of September, 2021.

BENJAMIN, AARONSON, EDINGER & PATANZO, P.A.


  /s/ Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440/ 337-0696 (Fax)
GSEdinger12@gmail.com
*Attorney for Defendants*